```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

COVENANT TOMATO SALES, INC.,

                Plaintiff,

vs.                                       Case No. 2:10-cv-337-FtM-29DNF

JAMES L. SUTTLES d/b/a NATURE QUALITY VINE RIPE TOMATOES,

                Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Emergency Motion to Dissolve Preliminary Injunction (Doc. #28) filed on June 23, 2010. Plaintiff filed a Memorandum in Opposition (Doc. #31) on June 25, 2010. On July 7, 2010, defendant filed the Declaration of Danny R. Jones. (Docs. ## 33, 34.) The Court conducted an evidentiary hearing on July 16, 2010. (Doc. #45.)

**I.**

In a June 16, 2010 Opinion and Order (Doc. #22) the Court granted Plaintiff's Motion for Preliminary Injunction and issued a Preliminary Injunction (Doc. #23) the same day. The Court's Opinion and Order stated in part:

> Defendant argues that the record establishes that he was actually a co-seller or joint venturer with plaintiff in selling the tomatoes, not a buyer of the tomatoes. The Court disagrees, and finds that the record, at this stage of the proceedings, establishes that defendant was the buyer of the tomatoes and that he in turn sold the tomatoes to Danny Jones. The Affidavit of Michael Sammons (Doc. #3) states that Covenant Tomato sold Suttles Vine Ripe tomatoes, and the various invoices are

> billed to Suttles' company, Nature Quality Vine Ripe. While the parties agreed that Suttles would pay a set amount plus an additional amount determined by his profit, the evidence does not establish that this makes Suttles a co-seller or joint venturer with plaintiff. The Court therefore concludes that PACA applies in this case, and that plaintiff has established a substantial likelihood of succeeding on the merits.

(Doc. #22, pp. 2-3.) The Declaration of Danny R. Jones (Docs. ## 33, 34) supported defendant's position, which was central to both the preliminary injunction and the Court's subject matter jurisdiction. The July 16, 2010, evidentiary hearing was essentially a mini-trial of the case, and the Court heard testimony from Mike Sammons (Sammons), Danny Jones (Jones), and James Suttles (Suttles). Both sides also presented various written documents as exhibits.

Based upon the testimony at the evidentiary hearing, it is clear that all of the Declarations submitted to the Court for its consideration in connection with the preliminary injunction or the motion to dissolve were not completely accurate. Since the Court has now had the benefit of testimony from all three individuals, as well as the exhibits, the Court finds that it should reconsider the issuance of the preliminary injunction in light of the actual evidence presented at the evidentiary hearing. The legal standards for the issuance of a preliminary injunction remain as stated in the prior Opinion and Order. (Doc. #22.)

**II.**

The primary issue in this case remains as it has always been: Was Sammons a seller of tomatoes to Suttles, who resold them to Jones, or were Sammons and Suttles co-sellers/joint venturers/partners who sold tomatoes to Jones. Jones concedes he owes the money for six of the eight shipments at issue, and believes he owes the money to both Suttles and Sammons. The basis for his belief, in the Court's view, is simply insufficient to carry any weight in the Court's determination.[1] That leaves the testimony of Sammons and Suttles, as well as the supporting documentation.

Both sides agree on some basic facts. Both Sammons and Suttles have bought and/or sold produce in the area for decades. For approximately the last nine years, Sammons' company, Covenant Tomato Sales, Inc. (Covenant Tomato) has sold tomatoes to Suttles, d/b/a Nature Quality Vine Ripe Tomatoes (Nature Quality). These sales were the result of a seller-buyer relationship, both parties were well aware of the provisions of the Perishable Agricultural Commodities Act (PACA), and there were never any issues regarding payment. In January 2010, southwest Florida experienced cold weather, which resulted in the inability to obtain tomatoes from the area. In early February 2010, Suttles told Sammons that he had

---

[1]Jones testified that he thought there was a partnership between Sammons and Suttles because Suttles had told Jones "we can get you tomatoes from Mexico."

a customer who would buy tomatoes (Jones); Sammons stated that he had a source in Arizona for tomatoes originating in Mexico. From here, the testimony diverges.

Sammons testified that he agreed to sell tomatoes to Suttles in the same capacity as always, as a seller to a buyer. Pricing these tomatoes, however, was more complex given their source. Sammons testified that he and Suttles came to the following agreement as to a pricing formula: The price to Suttles would be the total of (1) the cost of the tomatoes to Sammons, plus (2) the cost of transportation of the tomatoes to Southwest Florida, plus (3) one-half of the profit Suttles ultimately obtained from the sale of the tomatoes to his customer (Jones). Because Suttles told Sammons who his customer was, all deliveries, except two, were shipped directly to Jones. Sammons had no prior relationship with Jones.

Suttles testified that while this formula is correct, what he and Sammons agreed upon was essentially a joint venture in which they were co-sellers of the tomatoes to Jones and agreed to split the profits (or losses).

A total of twenty-six deliveries of tomatoes were made by Sammons pursuant to this oral agreement with Suttles. Suttles paid for the first eighteen loads without incident, with money that originated from Jones. The last eight loads, which are the subject of this litigation, were not paid for. Six loads were delivered to

Jones, who admitted owing money but being unable to pay.  Two of the loads were delivered to Suttles, who attempted to pay with a check drawn on an account which did not have sufficient funds at the time.

Sammons testified that each transaction followed the same basic pattern.  Sammons would be contacted by Suttles and directed by Suttles where the tomatoes should be delivered, typically directly to Jones in Plant City, Florida.  Sammons kept a small notebook which he referred to as his Order Book in which he would note details about each order.  Sammons would then prepare a written Invoice or Confirmation of Sale and fax it to Suttles at the Nature Quality office in Immokalee, Florida.  Sammons would hire truckers to transport the tomatoes from Arizona, and gather the bills of lading from the deliveries to Jones.  Through frequent communications with Suttles, Sammons would determine how much profit had been made by Suttles from his sales to Jones.  Sammons would then prepare a typed Invoice, setting forth in detail his price calculations, and bill Suttles for each load of tomatoes by faxing the Invoice to Nature Quality.  Sammons introduced these documents for each of the twenty-six loads of tomatoes.  (See Doc. #46, Exhs. 1, 4-11.)

Sammons' documentation establishes that the first order was placed on or about February 2, 2010, with a payment invoice being faxed to Nature Quality on February 13, 2010.  Subsequent orders

were placed on or about February 8, 9, 15, 16, 17, 19, 22, 23, 2010; and March 3, 5, 8, 9, 11, 15, 16, 2010. (Id., Exh. 1.) Corresponding invoices were faxed to Nature Quality after each delivery. These invoices, totaling more than $430,000.00, were paid by Suttles.

The loads of tomatoes which were not paid for began with orders beginning March 18, 2010. Sammons produced the same type of paperwork as the prior transactions. Orders were placed on or about March 18, 24, 29, 2010; and April 2, 6, 7, 8, 9, 2010. (Id., Exhs. 4-11.) Corresponding invoices were faxed to Nature Quality.

Suttles testified that he was in Tennessee for much of the time, and simply did not see the faxed documents piling up in his office until April 2010. When he did see the documents, he thought it was a joke. Suttles testified that he was the buyer of the two loads delivered directly to him, and had paid for the loads by check. He conceded that at the time he wrote the checks for $28,000 to Sammons his account did not have sufficient funds, but believed his overdraft protection would kick in and the bank would have honored the checks if they had been presented. Suttles testified that he never provided any money for the purchases of the tomatoes, never was involved in any of the logistics relating to their transportation, never received any profit, and never requested or received any type of accounting of the profits or losses from his partnership with Sammons. Suttles testified there

was no agreement as to when the parties would settle up the financial aspects of the transactions.

**III.**

As stated before, plaintiff must establish the following four prerequisites in order to obtain a preliminary injunction: (1) a substantial likelihood of succeeding on the merits; (2) a substantial threat of irreparable injury if relief is denied; (3) an injury that outweighs the opponent's potential injury if relief is granted; and (4) that an injunction would not harm or do a disservice to the public interest. <u>SunTrust Bank v. Houghton Mifflin Co.</u>, 252 F.3d 1165, 1166 (11th Cir. 2001). After hearing the testimony and reviewing the exhibits, the Court concludes that plaintiff has established his burden.

The evidence which the Court finds credible convinces the Court that there is a substantial likelihood that plaintiff will succeed on the merits of its case. While the testimony was conflicting, both the contemporaneously created documents and the conduct of the parties support plaintiff's view that there was a seller-buyer relationship with a creative pricing formula, not a joint-venture type relationship.

> A joint venture is an association of persons or legal entities to carry out a single business enterprise for profit. It is a partnership of limited scope . . . and duration. [ ] The relationship of joint adventurers is created when two or more persons combine their property or time or a combination thereof in conducting some particular line of trade or for some particular business deal. [ ] A contract to enter into a joint venture is an

>indispensable prerequisite to the formation of the venture.

DK Arena, Inc. v. EB Acquisitions I, LLC, 31 So. 3d 313, 326 (Fla. 4th DCA 2010)(internal quotations and citations omitted). Sammons acted in accordance with a seller-buyer view of the relationship, billing Suttles for the costs of every load even where the re-sale resulted in a "loss" of the profit component of the pricing. Suttles did not act in accordance with what a reasonable person would have done had he actually thought there was a joint venture. Suttles contributed no money up-front to pay for the tomatoes he now says he was co-buying, and did literally nothing in connection with the shipments. He never paid any attention to the profit or loss from the transactions, and by his account, was simply a middle man for large payments of cash from Jones to Sammons. The fact that the PACA regulations recognize a "joint account transaction," 7 C.F.R. § 46.2(s), does not establish that these transactions were such.

Additionally, the Court finds that there is a substantial threat of irreparable injury if relief is denied because defendant is not financially able to pay the bill. The Court continues to reject defendant's argument that no amount is due because defendant is a co-seller. While defendant testified that he had sufficient assets to be good for the total amount, when pressed as to the $28,000 he concedes he owes, he stated his assets were not liquid enough to pay that amount. Finally, the public interest is served

in the circumstances of this case by issuance of an injunction to protect the PACA interests of the seller.

Accordingly, it is now

**ORDERED**:

1. Defendant's Emergency Motion to Dissolve Preliminary Injunction (Doc. #28) is **DENIED**.

2. After reconsideration of the preliminary injunction, the Preliminary Injunction (Doc. #23) shall stand as issued.

**DONE AND ORDERED** at Fort Myers, Florida, this __22nd__ day of July, 2010.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record