```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

COVENANT TOMATO SALES, INC.,

                 Plaintiff,

vs.                                     Case No.  2:10-cv-337-FtM-29DNF

JAMES  L.  SUTTLES  d/b/a  NATURE
QUALITY VINE RIPE TOMATOES,

                 Defendant.
_____
```

**OPINION AND ORDER**

This matter came before the Court on August 22, 2011, for a Final Pretrial Conference.  The parties agreed to a bench trial, and agreed that the Court should consider the evidence presented at the hearing on the motion for a preliminary injunction and the evidence presented in connection with the summary judgment motion (Doc. #65).  The Court agreed, and heard oral argument on the outstanding issues.  The Court makes the findings of fact and conclusions of law set forth below.

**I.**

Plaintiff Covenant Tomato Sales, Inc. (plaintiff or Covenant) and James Suttles (defendant or Suttles), an individual doing business as Nature Quality Vine Ripe Tomatoes, have been buying and selling tomatoes to and from one another for approximately ten years.  (Doc. #93, ¶¶ 3-6.)  Both hold valid licenses issued by the Department of Agriculture under the Perishable Agricultural Commodities Act of 1930 (PACA).  Between March 8, 2010, and April

10, 2010, Covenant made twenty-six deliveries of tomatoes to Suttles, which were accepted by Suttles without protest. The details of these transactions were set forth in the Court's Opinion and Order (Doc. #48) in connection with a preliminary injunction, and are adopted here. Additionally, the Court adopts the facts in the Joint Pretrial Statement. (Doc. #92, pp. 4-5, ¶¶(9)1-15.) Invoices for each delivery were issued by Covenant to Suttles and timely sent to Suttles by way of facsimile. Each invoice contained the statutory notice of trust language from 7 U.S.C. § 499e(c)(4). (Id., ¶(3)A.) Suttles paid for eighteen deliveries, Doc. #68, Exhibit B(1), but failed to pay Covenant for eight of the deliveries, Doc. #68, Exhibit B(3)-(11). Suttles owes Covenant a total of $235,367.12 for these tomatoes, as computed in the Joint Pretrial Statement (Doc. #92, ¶(7)).

Covenant filed a five-count Complaint (Doc. #1) against Suttles, four counts of which are brought under PACA. Count I seeks a declaratory judgment pursuant to 7 U.S.C. § 499e(c)(3) and (4) stating that Covenant has a valid PACA trust claim in the amount of $235,367.12[1] against Suttles, and that its valid PACA trust claim includes interest from the date each invoice became past due, costs, and attorneys' fees. Count II seeks an order pursuant to 7 U.S.C. § 499e(c)(5) directing Suttles to pay

---

[1] A different amount is set forth in each count of the Complaint, but the parties have now agreed to the $235,367.12 amount.

Covenant, as a beneficiary of the PACA trust, PACA Trust Assets in the amount of $235,367.12 plus interest from the date each invoice became past due, costs, and attorneys' fees. Count III seeks an order pursuant to 7 U.S.C. § 499b(4) directing Suttles to maintain PACA Trust Assets in the amount of $235,367.12 plus the claims of all other unpaid suppliers of produce that properly preserved PACA trust claims, creating a common fund from which all PACA trust beneficiaries may be paid, and enjoining dissipation of such PACA Trust Assets. Count IV seeks an order pursuant to 7 U.S.C. § 499b(4) directing Suttles to pay Covenant $235,367.12 plus interest, costs and attorneys' fees for violating PACA (7 U.S.C. § 499b(4)) by failing to pay for the tomato deliveries. Count V seeks payment of the $235,367.12 plus interest, costs and attorneys' fees for breach of contract. Count VI seeks an order directing Suttles to disgorge any PACA Trust Assets in his possession in the amount of the $235,367.12 plus interest, costs and attorneys' fees. The Court has jurisdiction under 7 U.S.C. §499e(c)(5), and it is undisputed that venue is proper. (Doc. #92, ¶¶ (10)[2]1, 2.)

## II.

PACA prohibits certain "unfair conduct" in or in connection with any transaction in respect to a perishable agricultural commodity in interstate or foreign commerce. 7 U.S.C. § 499b. As

---

[2]Paragraph (10) is mislabeled as a second paragraph (9).

relevant to this case, it is unlawful for "any commission merchant, dealer, or broker . . . to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; . . ." 7 U.S.C. § 499b(4). "[S]uch commodity" refers to a "perishable agricultural commodity," which includes "[f]resh fruits and fresh vegetables of every kind and character; . . ." 7 U.S.C. § 499a(b)(4)(A). A "commission merchant" is "any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(b)(5). A "dealer" is, with certain exceptions not applicable to this case, "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce, . . ." 7 U.S.C. § 499a(b)(6). A "broker" is, with an exception not applicable to this case, "any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser, respectively, . . ." 7 U.S.C. § 499a(b)(7). "Full payment promptly" means payment within ten days after the buyer accepts the commodities, 7 C.F.R. § 46.2(aa)(5), unless the parties have agreed to extend the time for payment not to exceed thirty days after acceptance of the

commodities, 7 C.F.R. § 46.46(e)(2). A transaction is considered to be in interstate or foreign commerce if the commodity "is part of that current of commerce usual in the trade in that commodity whereby such commodity and/or the products of such commodity are sent from one State with the expectation that they will end their transit, after purchase, in another, . . . ." 7 U.S.C. § 499a(b)(8).

If "unfair conduct" occurs, PACA provides that a civil action may be filed against the buyer. 7 U.S.C. § 499e(b)(2). PACA provides that the person shall be liable for the "full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a). This includes expenses and fees that are due contractually or otherwise in connection with the transaction. Pac. Int'l Mktg., Inc. v. A&B Produce, Inc., 462 F.3d 279, 285-86 (3d Cir. 2006). If the invoices for the products contain language providing for attorney fees, reasonable attorney fees may be recovered. Nickey Gregory Co., LLC v. AgriCap, LLC, 597 F.3d 591, 597 n.1 (4th Cir. 2010)(citing Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 632 (11th Cir. 2004) and other cases). Similarly, pre-judgment interest is also available. Country Best, 361 F.3d at 632.

Additionally, upon the sale of perishable agricultural commodities, until full payment is made, a trust is automatically created for the benefit of the unpaid sellers on: (1) the commodities, (2) the inventory or products derived from the

commodities, and (3) the proceeds of the inventory or products. 7 U.S.C. § 499e(c)(1)-(2); Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997); Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 413 (5th Cir. 2003). The trust created by PACA is a "nonsegregated 'floating' trust" until all sellers of such commodities are paid. 7 C.F.R. § 46.46(b). PACA trusts thus give sellers of perishable agricultural commodities a right of recovery that is superior to the right of all other creditors, including secured creditors. 7 U.S.C. § 499e(c)(1). General trust principles govern PACA trusts unless the principle conflicts with PACA. Gargiulo, 131 F.3d at 999; Reaves Brokerage Co., 336 F.3d at 413; Boulder Fruit Express & Heger Organic Farm Sales v. Transp. Factoring, Inc., 251 F.3d 1268, 1271 (9th Cir. 2001).

While the PACA trust is automatically established when perishable commodities are purchased upon credit, the seller must perfect its claim. This is accomplished by written notice pursuant to § 499e(c)(3), or by inclusion of certain language in the ordinary and usual billing or invoice statements, pursuant to § 499e(c)(4).

As to the breach of contract count, "[t]he elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." AVVA-BC, LLC v. Amiel, 25 So. 3d 7, 12 n.3 (Fla. 3d DCA

2009)(citations omitted). A breach of contract claim is a separate remedy in addition to any PACA remedy. 7 U.S.C. § 499e(b); <u>Paris Foods Corp. v. Foresite Foods, Inc.</u>, 278 F. App'x 873, 875 (11th Cir. 2008).

### III.

The Court will discuss the counts of the Complaint in the order alleged.

**A. Count I: PACA Declaratory Judgment:**

Count I seeks a declaratory judgment stating that Covenant has a valid PACA trust claim in the amount of $235,367.12 against Suttles, and that this PACA trust claim includes interest from the date each invoice became past due, costs, and attorneys' fees. Plaintiff's Trial Brief (Doc. #93, p. 6) seeks a money judgment plus pre-judgment interest. Based upon the credible evidence, the Court finds that: (1) The tomatoes involved in all 26 deliveries were a perishable agricultural commodity; (2) the deliveries of these tomatoes were in or in connection with transactions in interstate or foreign commerce; (3) Covenant and Suttles both were commission merchants, dealers and brokers; (4) Suttles agreed to pay for the tomatoes according to the terms of the respective invoices (Doc. #68, Exhibit B(4)-(11), i.e., at the prices indicated net 21 days; (5) Suttles failed to make full payment promptly for these eight deliveries of tomatoes, and continues to owe Covenant $235,367.12 for the eight deliveries of tomatoes; (6)

Suttles has violated Section 499b(4) by failing to make full payment promptly with respect to the eight transactions in tomatoes with Covenant; (7) Covenant has been injured by this violation of Section 499b(4), and is entitled to the full amount of damages sustained in consequence of the violations pursuant to 7 U.S.C. § 499e(a); (8) the full amount of damages sustained in consequence of the violations consists of the $235,367.12, and interest accruing from the time the invoices became past due through the date of the judgment, i.e., pre-judgment interest[3]; and (9) the invoices from Covenant did not obligate Suttles to pay costs or attorney fees, and therefore neither of these items can be included as components of the full amount of damages. Therefore, plaintiff is entitled to a declaratory judgment stating that Covenant has a valid PACA trust claim in the amount of $235,367.12 against Suttles, and that this PACA trust claim includes interest from the date each invoice became past due.

**B. Counts II, III, and IV:**

Plaintiff asserts in its Trial Brief (Doc. #93, p. 6) that Counts II, III, and IV relate to Suttles' duties to Covenant as

---

[3]The Court has the discretionary authority to award pre-judgment interest if such interest would serve the purpose and principles of PACA. Rodgers v. United States, 332 U.S. 371, 373-74 (1947); Middle Mountain Land & Produce Inc. v. Sound Commodities, Inc., 307 F.3d 1220, 1225-26 (9th Cir. 2002). The award of pre-judgment interest in this case would serve both the purpose and principles of PACA. The parties agree that the Florida statutory rate of interest, six percent per annum, may be used in this case for pre-judgment interest.

trustee under PACA, specifically the duty to hold PACA assets in trust for the benefit of Covenant and other unpaid suppliers of produce (if any) and a duty to tender full payment promptly. Covenant alleges a breach of these duties, and seeks a judgment in the amount of $235,367.12 plus pre-judgment interest. Section 499e(a) provides for recovery of damages for unfair conduct in violation of Section 499b. Based upon the factual findings set forth above, the Court finds that plaintiff is entitled to judgment in the amount of $235,367.12, interest accruing from the time the invoices became past due through the date of the judgment. Judgment will enter accordingly as to Counts II, III, and IV.

**C. Count V:**

Count V seeks payment of the $235,367.12 plus pre-judgment interest for breach of contract (Doc. #93, p. 7). The Court agrees with plaintiff that all elements of a breach of contract claim have been established. Covenant entered into valid contracts with Suttles as set forth in the invoices and related documents calling for delivery of tomatoes and payment net 21 days. The tomatoes were properly delivered, but Suttles failed to pay for eight of the deliveries. Covenant was damaged in the amount of $235,367.12 plus pre-judgment interest. Judgment will enter accordingly.

**D. Count VI:**

Count VI seeks an order directing Suttles to disgorge any PACA Trust Assets in his possession in the amount of the $235,367.12

plus interest, costs and attorneys' fees. Plaintiff has not pursued the literal relief requested in this count, but rather seeks either a permanent injunction against dissipation of trust assets or a *nunc pro tunc* order concerning the priority of its judgment as it relates to the Immokalee Property. (Doc. #93, pp. 8-10.) The Court declines to do either.

Whether to issue a permanent injunction is committed to the sound discretion of the court. Common Cause/Georgia v. Billups, 554 F.3d 1340, 1349 (11th Cir. 2009). Plaintiff has been protected by a preliminary injunction, and the Court will enter a judgment against defendant under both PACA and the breach of contract claim. This judgment may be executed upon in the ordinary manner, with the exception that it will have priority as to PACA trust assets. If the Immokalee Property is a PACA trust asset, an issue the Court does not need to resolve in this case, the judgment in this case will have priority over the Consensual Lien, regardless of when the Consensual Lien was filed, since a lien is not a transfer of the asset, and does not adversely affect the priority of the PACA beneficiary. E.g., C.H. Robinson Co. v. Trust Co. Bank, N.A., 952 F.2d 1311, 1316 n.5 (11th Cir. 1992)("When secured lenders use their security agreement to foreclose on property or otherwise enforce their contractual rights, they essentially force the transfer of trust property in satisfaction of an antecedent debt."); A&J Produce Corp. v. Bronx Overall Econ. Dev. Corp., 542

F.3d 54, 58-59 (2d Cir. 2008)(a creditor holding a security interest remains inferior to the claims of a PACA creditor).

Accordingly, it is now

**ORDERED AND ADJUDGED:**

Judgment shall enter in favor of Covenant Tomato Sales, Inc. and against James L. Suttles, d/b/a Nature Quality Vine Ripe Tomatoes as follows: (1) As to Count I, the Court declares that Covenant Tomato Sales, Inc. has a valid PACA trust claim in the amount of $235,367.12 against James L. Suttles, d/b/a Nature Quality Vine Ripe Tomatoes, and that this PACA trust claim includes interest from the date each invoice became past due, which totals $20,678.65 as of September 6, 2011; and (2) As to Counts II, III, IV, and V, plaintiff Covenant Tomato Sales, Inc. is awarded $235,367.12 plus pre-judgment interest totaling $20,678.65 from James L. Suttles, d/b/a Nature Quality Vine Ripe Tomatoes. The Court declines to provide the relief sought in Count VI or the requested alternative relief. The Clerk of the Court shall enter judgment on September 6, 2011 accordingly, terminate all deadlines, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___31st___ day of August, 2011.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

Copies: Counsel of record